IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BENNIE GILLISPIE, JR., <br><br> Plaintiff, <br><br> vs. <br><br> VILLAGE OF FRANKLIN PARK, and MICHAEL SERVINI <br><br> Defendants. | No. 04 C 8097 <br><br> Magistrate Judge Jeffrey Cole |

## MEMORANDUM OPINION AND ORDER

### I.
### BACKGROUND

#### A.
#### Background Of The Litigation

The plaintiff, an African-American employee of the Village of Franklin Park's Streets and Sanitation Department, filed a two-count complaint in January 2002 under 42 U.S.C. § 1983 and Title VII of the Civil Rights Act, alleging that he was the victim of racial harassment and discrimination at the workplace. *Gillispie v. Village of Franklin Park*, No. 02 C 0148. A year later, the parties entered into a written settlement agreement, which provided for binding arbitration of any future employment dispute arising out of his continued employment with the Village, including claims of racial discrimination. The agreement provided that the costs of the arbitration, excluding attorney's fees, would be borne by the loser.

For a time, all was well. But then in late 2004, Mr. Gillispie filed a complaint in the district court against the Village and his supervisor, Michael Servini. An amended complaint followed alleging that in

violation of 42 U.S.C. §§1981 and 1983 the defendants discriminated against him due to his race by subjecting him to a hostile work environment and by retaliating against him when he complained about it. The Village has moved to dismiss the amended complaint, claiming there is no subject matter jurisdiction. The motion, which cites not a single case, is based on the *ipse dixit* that it is "obvious that the claims contained in plaintiff's complaint . . . are subject to the arbitration provision contained in the parties' settlement agreement." (Motion to Dismiss, ¶ 4).[1] Mr Gillispie's response is only slightly less laconic. It relies on a single case, which, as will be seen, does not begin to answer the questions raised in this case.

### B.
### Mr. Gillespie's Settlement Of The Earlier Litigation

Paragraph 3 of the settlement agreement provides:

3. In further consideration of the promises made in this Release, Gillispie agrees to the following conditions:

> (a) That any dispute or claim concerning his continued employment with the Village of Franklin Park, or the terms, conditions, or benefits of such employment, such as, or similar to but not exclusive of racial harassment or failure to promote but not based on race, including whether such dispute or claim is arbitrable or not [2], will

---

[1] Initially, the Village moved to dismiss certain counts of the complaint for failure to adequately plead facts to support a claim of municipal liability against the Village, as well as to dismiss based on the arbitration clause in the settlement agreement. After the plaintiff was granted leave to file an amended complaint, both motions were denied as moot. The plaintiff filed the amended complaint, and the Village stood on the motion to dismiss based on the arbitration clause, which I considered as a motion to compel arbitration. The Village did not refile the motion to dismiss for failure to properly plead a claim of municipal liability against the Village.

[2] The question of whether the underlying validity of the arbitration clause in this case is an issue for the court rather than a question for the arbitrator has not been raised by the parties. Given the wording of the above quoted phrase, there is not clear and unmistakable evidence that this is a question that the contracting parties would have expected an arbitrator to have decided. *Cf. Green Tree Financial Corp. v. Bazzle*, 539 U.S. 444, 452 (2003). *Compare Musnick v. King Motor Co. of Fort Lauderdale*, 325 F.3d
(continued...)

be settled by binding arbitration, including any and all legal theories that may be applicable, including, but not limited to statutory violations or causes of action which may authorize suit for any such violations, such as or similar to but not necessarily exclusive of, Title VII of the Civil Rights Equal Pay Act or the Illinois Human Rights Act, but do not include dispute involving pensions or worker compensation claims. *The arbitration proceeding shall be conducted under the rules of the American Arbitration Association in effect at the time a written demand for arbitration is made.* A copy of any written demand for arbitration shall also be served upon the Superintendent of Utilities Department. A decision and award of the arbitrator made under the said rules shall be exclusive, final and binding on both parties, heirs, executors, administrators, successors and assigns. The costs and expenses, *not inclusive of attorneys' fees,* of arbitration, shall be borne by the party who does not prevail. (Emphasis supplied).³

Mr. Gillispie does not challenge the aspect of the fee-shifting provision that awards costs and expenses to the prevailing party. Nor does he contend that his claims are outside the scope of what he agreed to arbitrate. Rather, his sole argument is that the arbitration provision is unenforceable because Paragraph 3 provides in plain and unambiguous language that he could not be awarded attorney's fees in the arbitration, even if he were to prevail, whereas he would be eligible for a fee award as the prevailing

---

²(...continued)
at 1261 and *id.* at n.7 (11ᵗʰ Cir. 2003)(declining to decide the validity of a provision mandating that the loser pays costs and attorney's fees and leaving it for the arbitrator); *Carbajal v. H & R Block Tax Services, Inc.,* 372 F.3d 903, 906 (7ᵗʰ Cir. 2004)(same).

³ The plaintiff's quotation of Paragraph 3 in its response memorandum differed significantly from that quoted by the Village in its motion to dismiss. Thus, the parties were ordered to provide a copy of the executed settlement agreement. A review of the agreement reveals that the Village's motion misquoted Paragraph 3 by excluding the following phrases: (a)"such as, or similar to but not exclusive of racial harassment or failure to promote but not based on race"; (b) "such as or similar to but not necessarily exclusive of, Title VII of the Civil Rights Equal Pay Act or the Illinois Human Rights Act, but do not include dispute involving pensions or worker compensation claims"; and (c) most importantly, the phrase "not inclusive of attorneys' fees" was excluded from the last sentence of paragraph 3. Finally, the phrase, "statutory violations or causes of action which may authorize suit for any *such* violations," was misquoted in the Village's motion as "any other violations."

3

party under the Civil Rights Attorneys' Fee Awards Act of 1976 if the case were heard here.[4] This argument rests on a cramped interpretation of Paragraph 3 and an impermissible reading of *McCaskill v. Management Corporation*, 298 F.3d 677 (7th Cir. 2002), the sole case on which he relies.

## II.
## ANALYSIS

### A.

The Federal Arbitration Act ("FAA") was enacted in 1925 and then re-enacted and codified as Title 9 of the United States Code. The purpose of the FAA is "'to reverse the longstanding judicial hostility to arbitration agreements. . .and to place them on the same footing as other contracts.'" *Green Tree Financial Corp.-Alabama v. Randolph*, 531 U.S. 79, 89 (2000). This aim requires "'rigorous[ ] enforce[ment]'" of agreements to arbitrate in order to give effect to the contractual rights and expectations of the parties. *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987). Consistent with the declared national policy favoring arbitration, employment discrimination claims of all kinds are arbitrable, as are other kinds of statutory violations. *See Green Tree Financial Corp.-Alabama*, 531 U.S. at 89; *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 62 (1995); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26-35 (1991).[5]

---

[4] The Act, 90 Stat. 2641, as amended, 42 U.S.C. § 1988, provides that "[i]n any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92-318 . . ., or title VI of the Civil Rights Act of 1964 . . ., the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."

[5] Among the many federal statutory claims that are subject to arbitration are claims under the Securities Act of 1933, the Securities Exchange Act of 1934, the Sherman Act, and the Racketeer Influenced and Corrupt Organizations Act, *Green Tree Financial Corp-Alabama, supra*, 531 U.S. at 89 (Truth in Lending Act).

In *Gilmer*, which involved a claim under the Age Discrimination in Employment Act, the Supreme Court held that there was no reason to treat civil rights statutes any differently than other important statutes that may be the subject of enforceable arbitration agreements and stressed that pre-dispute arbitration clauses should be enforced unless the plaintiff showed that Congress specifically intended to preclude arbitration. 500 U.S. at 26. After *Gilmer*, courts began routinely to endorse the arbitration of discrimination claims. *See Koveleskie v. SBC Capital Markets, Inc.*, 167 F.3d 361, 364-65 (7th Cir. 1999)(collecting cases).

The FAA provides for stays of proceedings in the district court when an issue in the proceeding is referable to arbitration and for orders compelling arbitration when one party has failed or refused to comply with an arbitration agreement. 9 U.S.C. §§ 3 and 4. These provisions, the Supreme Court has stressed time and again, manifest the liberal federal policy favoring arbitration agreements. *See Shearson/American Express, Inc.*, 482 U.S. at 226. Any doubts with respect to arbitrability therefore should be resolved in favor of arbitration. *Green Tree Financial Corp. v. Bazzle*, 539 U.S. at 452; *James v. McDonald's Corp.*, 417 F.3d 672, 677 (7th Cir. 2005).

Although the parties have not addressed the issue, the threshold question is the applicability of the FAA to their settlement agreement requiring arbitration of any future employment discrimination claims. In order for a "written provision in any . . . contract" providing for the settlement of future disputes by arbitration to be within the scope of the FAA, the contract must evidence "a transaction involving commerce." 9 U.S.C. §2. Contracts of employment, with certain exceptions not relevant here, are covered by the Act. *EEOC v. Waffle House*, 534 U.S. 279, 289 (2002); *Green Tree Financial Corp.-Alabama*

*v. Randolph*, 531 U.S. at 89; *Gilmer*, 500 U.S. at 26-35; *Koveleskie v. SBC Capital Markets, Inc.*, 167 F.3d at 364.

Significantly, the plaintiff does not argue that the settlement agreement is not within the scope of the FAA. Quite apart from any question of waiver, the settlement agreement evidences a transaction involving commerce, for it governs "any dispute or claim concerning [plaintiff's] *continued employment* with the Village of Franklin Park or the terms, conditions, or benefits of *such employment*." (Emphasis supplied). A contract that settles a prior federal discrimination suit and that expressly governs certain aspects of an employee's continued employment with the employer, if not itself an employment agreement (or at least a separate component of one), is functionally and analytically indistinguishable from an employment contract for purposes of the FAA, since each regulates, to varying degrees, aspects of the parties' employment relationship. If an employment contract involves commerce within the meaning of §2 of the Act – as it does – so, too, must the agreement in this case, especially given the Supreme Court's conclusion that the phrase "involving commerce," as employed in the FAA, should be given a broad meaning, extending the federal commerce power "to the full." *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 112 (2001); *Allied-Bruce Terminix Companies, Inc. v. Dobson*, 513 U.S. 265, 277 (1995). *Cf. McCaskill*, 298 F.3d at 678 (the plaintiff was required "as a condition of continued employment" to arbitrate certain disputes).[6]

---

[6] The FAA encompasses a wider range of transactions than those actually in commerce – that is, "within the flow of interstate commerce." *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003)(*citing Allied-Bruce*, 513 U.S. at 273). Congress' Commerce Clause power "may be exercised in individual cases without showing any specific effect upon interstate commerce" if in the aggregate the economic activity in question would represent "a general practice . . . subject to federal control." *Citizens Bank*, 539 U.S. at 56-57.

The inclusion of a choice of law provision in Mr. Gillispie's settlement agreement specifying that the agreement shall be governed by an construed in accordance with the laws of the State of Illinois (¶11) does not mean that the FAA is inapplicable. *Mastrobuono v. Shearson Lehman Hutton*, 514 U.S. at 62. *Cf. James v. McDonald's, supra*. But even if the Illinois Uniform Arbitration Act were to control, the analysis and the result would be no different than under the FAA. The language of the FAA and the Illinois Uniform Arbitration Act is essentially the same. *See J & K Cement Constr., Inc. v. Montalbano Builders, Inc.*, 119 Ill.App.3d 663, 668, 456 N.E.2d 889, 893 (2nd Dist. 1983); *Tyco Laboratories, Inc. v. DASI Industries, Inc.*, No. 92-5712, 1993 WL 356929, *5 (N.D.Ill. Sept. 9, 1993). This is not surprising as the two statutes have common origins, patterned after the New York arbitration statute enacted in 1920. *Federal Signal Corp. v. SLC Technologies, Inc.*, 318 Ill.App.3d 1101, 1111, 743 N.E.2d 1066, 1074 (1st Dist. 2001); *J & K Cement*, 119 Ill.App.3d at 668, 456 N.E.2d at 893. *See also Manos v. Geissler*, 321 F.Supp.2d 588, 591-92 (S.D.N.Y. 2004)(comparing FAA with New York's similar arbitration provision).

Indeed, the state courts interpreting Illinois' arbitration statute look for guidance to federal court decisions interpreting similar provisions of the FAA. *See Federal Signal Corp.*, 318 Ill.App.3d at 1111, 743 N.E.2d at 1074. Furthermore, the state policy favoring arbitration mirrors the federal policy favoring this method of dispute resolution. *Transamerica Financial Resources, Inc. v. Rondini*, 189 Ill.App.3d 853, 855, 545 N.E.2d 789, 791 (2nd Dist. 1989). In short, whether the FAA or the Illinois Uniform Arbitration Act applies, the result would be the same.

## B.

Mr. Gillispie's settlement agreement with the Village provided, in somewhat inverted language, that the prevailing party in the arbitration was entitled to the costs and expenses of arbitration, excluding attorney's fees. At one time, questions existed regarding the enforceability of an arbitration clause where the contract of employment contained a cost-shifting provision. The First, Fifth, and Seventh Circuits had held that a cost-shifting provision did not automatically render an arbitration agreement unenforceable. *See Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 170 F.3d 1, 15-16 (1st Cir.1999); *Williams v. Cigna Fin. Advisors Inc.*, 197 F.3d 752, 764 (5th Cir.1999); *Koveleskie v. SBC Capital Markets, Inc.*, 167 F.3d at 366. The District of Columbia Circuit and the Tenth Circuit took a different view, refusing to enforce such agreements on the ground that they effectively denied the Title VII plaintiff a forum to vindicate his claims. *See, e.g., Cole v. Burns Int'l Sec. Services*, 105 F.3d 1465, 1484-85 (D.C.Cir.1997); *Shankle v. B-G Maint. Mgmt. of Colorado, Inc.*, 163 F.3d 1230, 1234-35 (10th Cir.1999). Similarly, the Eleventh Circuit refused to enforce an arbitration agreement that potentially imposed "high costs" on the employee, holding that such an agreement undermines the policies that support Title VII. *Paladino v. Avnet Computer Technologies, Inc.*, 134 F.3d 1054, 1062 (11th Cir. 1998).

In *Green Tree Financial Corp.-Alabama v. Randolph, supra,* the Supreme Court underscored the strong federal preference for arbitration of disputes, even where arbitration might involve shifting of arbitration costs or fees. There, the Court rejected the Eleventh Circuit's conclusion that an arbitration agreement that is silent as to fees and costs is unenforceable because of the "risk" that plaintiff might be saddled with prohibitive arbitration expenses. While acknowledging that, "[i]t may well be that the existence of large arbitration costs could preclude a litigant . . . from effectively vindicating her federal

8

statutory rights in the arbitral forum," the Court held that the potential financial burden on the plaintiff was "too speculative" to invalidate the arbitration agreement before it. 531 U.S. at 90-91. Significantly, the Court made clear that the party seeking to avoid arbitration has the burden to show the likelihood of prohibitive expenses. Unsupported statements regarding the costs involved are insufficient to sustain that burden. *Id.* at 91 n. 6. *See also James v. McDonald's*, 417 F.3d at 679(plaintiff failed to demonstrate that the expenses she necessarily and definitely would incur would be prohibitive).

In the instant case, it has not even been suggested that the cost-shifting provision of Mr. Gillispie's settlement agreement will preclude him from vindicating those claims. If he prevails in the arbitration, the validity, *vel non*, of the non-prevailing party clause in the parties' arbitration agreement will be academic. *Musnick v. King Motor Co. of Fort Lauderdale*, 325 F.3d 1255, 1261 (11th Cir. 2003). If he loses, there will be time enough to raise the validity, as applied, of the cost-shifting provisions before the arbitrator. *See Carbajal v. H & R Block Tax Services, Inc.*, 372 F.3d 903, 905 (7th Cir. 2004)("the arbitrator rather than the court determines the validity of these ancillary provisions); *Musnick*, 325 F.3d at 1261 and *id.* at n.7.

## C.

We come then to Mr. Gillispie's only argument, which appears to run this way: Since *McCaskill v. Management Corporation*, 298 F.3d 677 (7th Cir. 2002) held that where the plain terms of an agreement requiring arbitration of a federal discrimination claim clearly prohibit the recovery of attorney's fees, the arbitration clause in this case must likewise be unenforceable. The objections to this conclusion are many. Although Mr. Gillispie ignores what actually occurred in *McCaskill* – and the Village's response brief ignores the case in its entirety– it is vital to note at the outset that, as the Eleventh Circuit has

remarked, the issue of the validity of an arbitration clause that precludes an award of attorney's fees in arbitration to a prevailing civil rights plaintiff was not "decid[ed]" in *McCaskill. See Musnick*, 325 F.3d at 1259 n.3. There was no opinion of the court: all three members of the panel filed separate opinions on very different grounds.

We begin, as we must, with a consideration of the facts of *McCaskill* and the instant case, "at least as an hypothesis to test the validity of the conclusions. . . ." *Douglas v. City of Jeanette*, 319 U.S. 157, 166 (1943) (Jackson, J., dissenting). After being employed by the defendant for a year, the plaintiff in *McCaskill* was required to sign a document, "as a condition of continued employment," that included an arbitration provision providing that each party would bear his or her own legal fees and costs in any ensuing arbitration, "regardless of the outcome of the arbitration." Each party was also to pay half of the arbitration costs including the arbitrator's fee. 298 F.3d at 678, 684. When Ms. McCaskill filed a sexual harassment suit in the district court under 42 U.S.C. §1981, the court granted a motion to compel arbitration and dismissed the matter. On appeal, the issues were reduced to one, namely the attorney's fees clause in the arbitration agreement. 298 F.3d at 679-80.

For Judge Bauer, the case turned on defense counsel's concession during oral argument that the arbitration provision was unenforceable:

> At oral argument, [defendant] conceded that the agreement is unenforceable if construed to limit [plaintiff's] ability to recover attorney's fees (provided she prevails) under Title VII. The agreement clearly bars the plaintiff's ability to recover any attorney's fees, *and because [defendant] conceded the agreement is therefore unenforceable, we need not proceed any further into an examination of whether Title VII's fee-shifting provisions override an arbitration agreement.* The verbal admission by SCI's counsel at oral argument is a binding judicial admission, the same as any other formal concession made during the course of proceedings. The agreement prohibits the recovery of

10

attorney's fees in any situation, *thus, based on [defendant's] concession, we find that the arbitration clause is unenforceable.*

298 F.3d at 680 (Citations omitted)(Parenthesis in original)(Emphasis supplied).

Judge Rovner concurred in the judgement reversing and remanding the case, but concluded that the court was not bound to accept SCI's counsel's concession, even if it were deemed a judicial admission, which she emphatically disputed. *Id.* at 681-82. She went on to conclude that a clause in a contract that precludes an award of attorney's fees in arbitration deprives the plaintiff of remedies essential to fulfill the remedial and deterrent functions of Title VII and thus is unenforceable. *Id* at 685. But Judge Rovner's opinion advocating an automatic rule of unenforceability was hers alone. Judge Manion wrote separately in dissent, concluding that the court of appeals lacked jurisdiction over the appeal.

Judge Rovner conceded that her position was, as she put it, "recently... challenged" in *Metro East Center for Conditioning and Health v. Qwest Communications Internat'l, Inc.*, 294 F.3d 924 (7th Cir. 2002). She acknowledged that *Metro East* concluded that since plaintiffs may forego attorney's fees under 42 U.S.C. §1988 – the statutory authorization for any fee award to Mr. Gillispie – employees can contract away their statutory remedies including the right to attorney's fees under other statutes. However, she concluded that attorney's fees under Title VII were not waivable since they were an integral part of the remedies necessary to obtain compliance with civil rights laws. But so, too, and no less integral, are the provisions of 42 U.S.C. §1988, whose title, "Proceedings in Vindication of Civil Rights," demonstrates the importance Congress attributed to it and the purpose Congress sought to achieve through its enactment.

attorney's fees in any situation, *thus, based on [defendant's] concession, we find that the arbitration clause is unenforceable.*

298 F.3d at 680 (Citations omitted)(Parenthesis in original)(Emphasis supplied).

Judge Rovner concurred in the judgement reversing and remanding the case, but concluded that the court was not bound to accept SCI's counsel's concession, even if it were deemed a judicial admission, which she emphatically disputed. *Id.* at 681-82. She went on to conclude that a clause in a contract that precludes an award of attorney's fees in arbitration deprives the plaintiff of remedies essential to fulfill the remedial and deterrent functions of Title VII and thus is unenforceable. *Id* at 685. But Judge Rovner's opinion advocating an automatic rule of unenforceability was hers alone. Judge Manion wrote separately in dissent, concluding that the court of appeals lacked jurisdiction over the appeal.

Judge Rovner conceded that her position was, as she put it, "recently... challenged" in *Metro East Center for Conditioning and Health v. Qwest Communications Internat'l, Inc.*, 294 F.3d 924 (7th Cir. 2002). She acknowledged that *Metro East* concluded that since plaintiffs may forego attorney's fees under 42 U.S.C. §1988 – the statutory authorization for any fee award to Mr. Gillispie – employees can contract away their statutory remedies including the right to attorney's fees under other statutes. However, she concluded that attorney's fees under Title VII were not waivable since they were an integral part of the remedies necessary to obtain compliance with civil rights laws. But so, too, and no less integral, are the provisions of 42 U.S.C. §1988, whose title, "Proceedings in Vindication of Civil Rights," demonstrates the importance Congress attributed to it and the purpose Congress sought to achieve through its enactment.

The Supreme Court has made clear that the fees authorized by §1988 are an integral part of the remedies necessary to obtain compliance with the civil rights laws. *See Evans v. Jeff D.*, 475 U.S. 717, 731 (1986); *Maine v. Thiboutot*, 448 U.S. 1, 9-11 (1980); *Dennis v. Higgins*, 498 U.S. 439, 464 (1991)(Kennedy, J., dissenting).[7] Like Title VII's built in fee-award provision, §1988 authorizes a court, in its discretion, to award attorney's fees as part of the costs in any action or proceeding to enforce a provision of §§1981-1986 of Title 42 and Title VI of the Civil Rights Act of 1964 (42 U.S.C. §2000d, *et seq.*) or 42 U.S.C. 13981. Both bestow on the prevailing party (generally plaintiffs) a statutory *eligibility* for – not an automatic entitlement to – an award of attorney's fees. Section 1988, however, does "not prevent the party from waiving this eligibility...." *Jeff D.*, 475 U.S. at 730. The statute and its legislative history nowhere suggest that Congress intended to forbid all waivers of attorney's fees – "even those insisted upon by a civil rights plaintiff in exchange for some other relief to which he is indisputably not entitled...." *Id.* at 731. Congress expected fee-shifting to attract competent counsel to represent citizens deprived of their civil rights; "it neither bestowed fee awards upon attorneys nor render them non-waivable or non-negotiable...." *Id.* at 731-32. In fact, the Court went on, "we believe that a general proscription against negotiated waiver of attorney's fees in exchange for a settlement on the merits would itself impede vindication of civil rights, at least in some cases, by reducing the attractiveness of settlement." *Id.* at 732.

It is difficult to identify a principled basis on which to distinguish Title VII's fee award provision from those in §1988. If attorney's fees under §1988 can be *presently* waived as part of the settlement of an extant civil rights case (as in *Jeff D.*), it is difficult to identify what principle or interest is fostered by

---

[7] The idea of private attorneys general is not a new one, nor are attorney's fees a new remedy, as the legislative history of §1988 made clear. *See* S.Rep. 94-1011. In 1976, Senate Report 94-1011 noted that Congress had since 1870 authorized fee-shifting under more than 50 laws.

12

prohibiting a civil rights plaintiff (like Mr. Gillispie) from agreeing to waive *future* fees as a condition of a present settlement in the event that the parties again become embroiled in civil rights litigation. Indeed, the arguments for prohibition are stronger in the former situation than in the latter. In a case like Mr. Gillispie's, there is a good deal of economic logic to the hunter's adage that a bird in the hand is worth two in the bush: In exchange for the immediacy and certainty of a monetary settlement – which may be substantial and to which the plaintiff indisputably is not entitled – the eligibility for a future fee award in a case that may never come to be is relinquished.

In the instant case, there is no mandatorily imposed blanket waiver required as a condition of employment – the situation that so troubled Judge Rovner. 298 F.3d at 686.[8] Rather, under the guiding hand of counsel, Mr. Gillispie made a voluntary decision about his own economic destiny and opted for the certainty of an immediate, substantial settlement. He cannot now retain the benefits of his bargain and avoid the consequences of that volitional choice, especially in the absence of any argument or showing that it somehow precludes him from vindicating his rights under §§1981 and 1983. *Cf. Green Tree Financial Corp.-Alabama v. Randolph*, 531 U.S. at 90; *Musnick*, 325 F.3d at 1259-60. Thus, even accepting Judge Rovner's concurrence as Seventh Circuit precedent does not result in an invalidation of the arbitration clause in this case.

But there is an even more compelling reason it cannot in any event control this case. Unlike *McCaskill*, the recovery of attorney's fees is not only not plainly prohibited by the text of the agreement, it is allowed. Mr. Gillispie's response brief contains no analysis of *his* settlement agreement, and it makes

---

[8] Requiring arbitration as a condition of employment is permissible even for discrimination claims. *See E.E.O.C. v. Luce, Forward, Hamilton & Scripps*, 303 F.3d 994, 1002-04 (9th Cir. 2002)(collecting cases); *Oblix, Inc. v. Winiecki*, 374 F.3d 488, 491 (7th Cir. 2004); *Carbajal*, 372 F.3d at 905-05.

13

not the slightest attempt to explain how it precludes, plainly (or otherwise), an award of attorney's fees in his favor if he were to prevail in the arbitration. The cost-shifting provision in the last sentence of Paragraph 3(a) of Mr. Gillispie's settlement agreement cannot be read in isolation without regard to the earlier sentence in the same paragraph that provides that the arbitration "shall be conducted under the rules of the American Arbitration Association." Sentences in a paragraph, no less than isolated words in a sentence, take their meaning from the company they keep, for "it is a 'fundamental principle of... language itself that the meaning of a word cannot be determined in isolation but must be drawn from the context in which it is used.'"*Textrom Lycoming Reciprocating Engine Division v. United Automobile, Aerospace & Agricultural Implement Workers of America Intern. Union,* 523 U.S. 653, 657 (1998). *See also* Scalia, A Matter of Interpretation: Federal Courts and the Law, 135 (1997)("The principle determinant of meaning is context....").

Under the American Arbitration Association's National Rules for the Resolution of Employment Disputes, an arbitrator "may grant *any remedy or relief* that the arbitrator deems just and equitable, *including any remedy or relief that would have been available to the parties had the matter been heard in court.*" (www.adr.org) (Emphasis supplied). In addition to this capacious grant of remedial authority – which is plainly sufficient to allow an award of attorney's fees – the AAA Rules explicitly provide that "[t]he arbitrator shall have the authority to provide for the reimbursement of representative's fees, in whole or in part, as part of the remedy, in accordance with applicable law." *Id.*

Paragraph 11 of the settlement agreement provides that it is to be construed under Illinois law. Under Illinois contract law, a writing is interpreted as a whole, and a contract should be read to give effect to all its provisions and to render them consistent with each other. *Mastrobuono,* 514 U.S. at 59, 63-64;

14

*Leahy Realty Corp. v. American Snack Foods Corp.*, 253 Ill.App.3d 233, 246-47, 625 N.E.2d 956, 966 (2nd Dist. 1993). Thus, when the last sentence of Paragraph 2 is read in conjunction with the earlier sentence in that paragraph making applicable the AAA Rules, it is immediately apparent that the parties contemplated that attorney's fees *would be* available to Mr. Gillispie if he were to prevail.[9] This is precisely the interpretive problem that confronted the Supreme Court in *Mastrobuono*.

There, the parties' agreement contained a choice of law provision specifying New York law. New York law prohibited an award of punitive damages by arbitrators, but not by judges. In Illinois, unlike New York, judges and arbitrators are empowered to award attorney's fees. The agreement also contained a provision requiring arbitration in accordance with NASD rules. While those rules – unlike the AAA rules in this case – did not clearly authorize an arbitrator to award punitive damages, they were broad enough at least to contemplate such a remedy. 514 U.S. at 60-61. Thus, the text of the arbitration clause, the Court held, did not support – indeed it contradicted – the conclusion that the parties agreed to foreclose claims for punitive damages. *Id.* at 61. The Court held that the dispute was arbitrable. The same analysis governs this case.

By excluding attorney's fees from the mandatory cost-shifting clause – perhaps because of the concerns raised by *McCaskill* itself – the parties manifestly intended that Mr. Gillispie not be automatically saddled with attorney's fees of the Village in the event he lost the arbitration. It is a *non-sequitur*,

---

[9] None of the principles discussed in the preceding and successive sections of this opinion were advanced in the Village's motion or in its 1 ½ page reply memorandum, which string-cited four cases for the general proposition (which no one disputes) that employment discrimination claims under Title VII are arbitrable and one case in support of the principle that whether a binding arbitration agreement exists is determined under principles of state contract law (equally indisputable). There was no response in the Village's reply memorandum to Mr. Gillispie's citation of *McCaskill*.

however, to reason from this that the parties intended to preclude Mr. Gillispie from even being eligible for an attorney's fee award if he were to prevail. The language chosen by the parties simply does not support that conclusion.[10] Moreover, it would be incongruous to suggest that having selected arbitration rules that allow for a fee award, the parties intended just a few lines later to have also excluded the possibility that the Village would have to pay in the event it lost the arbitration. A contrary interpretation "sets up the two clauses in conflict with one another: one foreclosing [attorney's fees], the other allowing them. This interpretation is untenable" and is contrary to basic principles of contract construction under Illinois law. *Mastrobuono*, 514 U.S. at 64.

Judge Easterbrook's opinion for a unanimous panel in *Metro East Center for Conditioning and Health v. Qwest Communications Internat'l, Inc.*, 294 F.3d 924 (7th Cir. 2002) applies here *pari passu*:

> [I]t is almost never right to read legal language as self-defeating. The district judge understood the clause as saying: 'Every dispute must be arbitrated, provided however that no such dispute is arbitrable.' Why would someone put such a clause in a tariff, a contract, or any other document. People draft documents to achieve *some* objective, and although the meaning of words can be elusive even after taking into account both linguistic and economic contexts, and some words may turn out to e redundant or otherwise carry no weight. It is not sensible to construe a substantial passage of a legal text as pointless. When one sentence seems to cancel out the rest of a sub-section, it is essential to ask whether that sentence *must* devastate its surrounding language. Is there no alternative reading of either the contract or the [Federal] Arbitration Act that will enable the whole clause to survive?"

---

[10] In the cases where the courts have found the parties intended to exclude the possibility of fees, the clauses have been explicit. *See Carbajal*, 372 F.3d at 905("Each party hereto shall bear the expense of their respective attorney's fees regardless of which party prevails"); *Spinetti v. Service Corp. Int'l.*, 324 F.3d 212, 216 n. 1 (3d Cir. 2003)("Each party shall pay its own attorney's fees, regardless of the outcome of the arbitration" and "[i]n the event of any inconsistency between this Agreement and the statutes... the terms of the Agreement shall apply.").

*Id.* at 926 (Emphasis in original).

As in *Metro East*, "[i]t isn't hard to think of one." *Id.* The parties intended that the costs and expenses of arbitration – but not legal fees – should be borne by the loser in the arbitration, while the legal fees were to be determined by the arbitrator as a matter of discretion, just as would occur were the case to be in the district court. This construction not only makes sense and accords with basic principles of contract construction under Illinois law, but is, more importantly, faithful to the federal policy that seeks to encourage arbitration, and that requires that "[a]ny doubts with respect to arbitrability therefore should be resolved in favor of arbitrability." *James v. McDonald's, supra.*

In *Livingston v. Associates Finance, Inc.*, 339 F.3d 553 (7th Cir. 2003), the Seventh Circuit had occasion to consider whether a similar reference to arbitration rules – there, the AAA's commercial arbitration rules – limited the plaintiff's right to attorney's fees under the pertinent statute. Given the fact that the arbitration rule in *Livingston* provided that the arbitrator's award "may include . . . an award of attorney's fees if . . . it is authorized by law or their arbitration agreement," the court refused to invalidate the arbitration provision. *Id.* at 558. Quoting the Supreme Court, the Seventh Circuit explained: "'[T]here is no reason to assume at the outset that arbitrators will not follow the law; although judicial scrutiny of arbitration awards necessarily is limited, such review is sufficient to ensure that arbitrators comply with the requirements of the statute.'" *Id.* at 558 (*quoting Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 232 (1987)). So, too, here. There is no reason to assume that the arbitrators will not follow the law in Mr. Gillispie's arbitration, in light of the AAA's rules authorizing an award of attorney's fees and the applicable federal law, which allows an award to a prevailing party. *See Koveleskie v. SBC Capital Markets, Inc.*, 167 F.3d at 366; *Owner-Operator Independent Drivers Association, Inc. v. Swift*

17

*Transportation Co., Inc. (AZ)*, 288 F.Supp.2d 1033, 1037 (D.Ariz. 2003); *Wilks v. Pep Boys*, 241 F.Supp.2d 860, 864 (M.D.Tenn. 2003).

Since the settlement agreement, properly construed, empowers an arbitrator to award attorney's fees to Mr. Gillispie if he were to prevail, there is no basis to invalidate the arbitration clause in the settlement agreement.

### D.

Assuming for the moment that the settlement agreement bars an award of attorney's fees to Mr. Gillispie no matter the outcome of the arbitration and that it is analytically inconsequential that the preclusion stemmed from his voluntary waiver as part of a settlement agreement of an earlier case, the question that is presented in stark relief is whether such a bar renders invalid an agreement to arbitrate a federal civil rights claim. Judge Rovner certainly appeared to think so, at least under Title VII and in the factual context presented by *McCaskill*. *See also, Spinetti v. Service Corp. Int'l.*, 324 F.3d 212, 216 (3d Cir. 2003)("The district court properly determined that the proviso requiring each party to pay its own attorney's fees – regardless of the outcome of the arbitration--runs counter to statutory provisions under Title VII and ADEA that permit an award of attorney's fees and costs to a prevailing party."); *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 673 n. 15 (6th Cir. 2003)(by implication).

However, Judge Easterbrook's opinion for the unanimous panel in *Metro East* points in a different direction. As discussed earlier, its carefully considered analysis of whether parties can contract to waive statutory entitlements, including eligibility for a fee award, concluded that they could. He canvassed a number of cases and areas in which individuals daily waive "the most fundamental rights," including constitutional rights, "in exchange for employment." 294 F.3d at 928. The opinion pointed out that the

18

Supreme Court held in *Jeff D.* that plaintiffs may forego attorney's fees under 42 U.S.C. §1988 – the source of any entitlement to a fee award in light of the claims in this case – and that it is possible to waive an entire civil-rights claim: "waiver of fee-shifting is a subset of that broader agreement." 294 F.3d at 929.

Judge Rovner characterized this as *dicta*. 298 F.3d at 685. The definitions of *dicta* are somewhat inconsistent, vague and circular. *United States v. Crawley*, 837 F.2d 291, 292 (7th Cir. 1988)(Posner, J.). The Seventh Circuit in *Crawley* suggested that "instead of asking what the word '*dictum*' means we ask what reasons there are against a court's giving weight to a passage found in a previous opinion." The chief reason for disregarding *dictum* is that being unnecessary to the outcome of the earlier case it was perhaps not as fully considered as it would have been if it were essential to the outcome. *Id*. The panel's discussion of the question in *Crawley*, was not perfunctorily considered. More importantly, it has been cited approvingly by the Seventh Circuit in the post-*McCaskill* case of *Carbajal v. H & R Block Tax Services, supra*. There, the arbitration provision required each party to bear their own attorney's fees regardless of who prevailed, even though the Fair Debt Collection Practices Act authorized an award of attorney's fees to the prevailing party. 372 F.3d at 906. Citing *Metro East*, the opinion held that an arbitration clause is not incompatible with federal law because it requires the litigants to bear their own attorney's fees, even though the statute entitles a prevailing party to recover attorney's fees. The court held that no general doctrine of federal law prevents parties from waiving statutory rights in exchange for other things they value more. *Id*. at 906.

## CONCLUSION

For the foregoing reasons and treating the motion as one to compel arbitration, the Village's motion [6] is GRANTED, and the plaintiff is ordered to proceed to arbitration, if he chooses to pursue his present

claims. Questions of the validity of any cost or fee-shifting provision that the arbitrator concludes exists shall be for the arbitrator to decide. *See Musnick v. King Motor Co. of Fort Lauderdale*, 325 F.3d at 1261; *Carbajal v. H & R Block Tax Services, Inc.*, 372 F.3d at 907 ("whether any particular federal statute overrides the parties' autonomy and makes a given entitlement non-waivable is a question for the arbitrator.").[11] The balance of the case is stayed pending arbitration. *See Oldroyd v. Elmira Savings Bank, FSB*, 134 F.3d 72, 75 (2nd Cir. 1998).

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

DATE: 12/13/05

---

[11] The arbitration clause in *Carbajal* was expansively drafted to provide that any claim or dispute "including the validity or enforceability of this arbitration provision or any part thereof" shall be resolved by binding arbitration. Of the overall arbitration provision, the court said, "[i]t would be hard to draft a broader clause." 372 F.3d at 905.

20